## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| DAVID BRADY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Docket No. 2:16-cv-4-NT |
| ) | |
| BATH IRON WORKS ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## ORDER ON MOTION TO DISMISS

Before the Court is the Defendant's motion to dismiss the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted (ECF No. 7). For the reasons stated below, the motion is **DENIED**.

## BACKGROUND

The Plaintiff in this case is David Brady, a carpenter who worked for Defendant Bath Iron Works for nearly 26 years. Compl. ¶ 5 (ECF No. 1). Bath Iron Works is primarily located in Bath, Maine and has more than 500 employees; it is a wholly-owned subsidiary of General Dynamics Corporation. Compl. ¶ 7. This case arises out of a dispute between Brady and his employer over his use of leave time pursuant to the Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654 (the "**FMLA**") and the Maine Family Medical Leave Act, 26 M.R.S.A. §§ 843-848 (the "**MFMLA**").

Brady started working for Bath Iron Works in 1989. Compl. ¶ 8. Towards the end of 2014, he began to suffer from "chronic, serious mental health conditions,

including depression and anxiety." Compl. ¶ 9. Brady sought medical treatment for these health conditions, and sometime in 2014 Bath Iron Works certified his request for intermittent leave pursuant to the FMLA and MFMLA. Compl. ¶¶ 10-11.[1]

On June 23, 2015, Brady again requested certification for intermittent FMLA[2] leave for his health condition. Compl. ¶ 12. Specifically, he completed the Bath Iron Works "Medical Certification Form" in cooperation with Dr. Alice Franklin, his primary care physician. Compl. ¶ 13. On this form, Dr. Franklin noted that Brady "suffered from depression and anxiety, that these conditions were partially related to work, that he had been prescribed a regimen of continuing treatment, that he would need leave for exacerbation of his condition as well as for ongoing treatment, and that he took prescription medication to manage his condition." Compl. ¶ 14. Dr. Franklin further noted that Brady's condition is "chronic and indefinite[,]" and she estimated that he would need 3 days (24 hours) per month of leave, taken either as partial or full days, depending on his symptoms. Compl. ¶¶ 15-16. Bath Iron Works notifies employees requesting leave that it "may ask for a second or third opinion at BIW's expense if it questions the medical certification[,]" but it did not do so in Brady's case. Compl. ¶ 18.

On June 26, 2015, Brady started his regular 7 a.m. shift at the Bath work site. Compl. ¶ 19. Later that morning, "he began to experience debilitating and

---

[1]      The Complaint does not indicate whether Brady ever actually took leave pursuant to this 2014 certification prior to June 26, 2015.

[2]      I follow the parties' lead and use "FMLA" as a stand-in for both the Family and Medical Leave Act and the Maine Family and Medical Leave Act.

2

incapacitating exacerbation of his stress and anxiety." Compl. ¶ 19. Brady went to Bath Iron Works's FMLA office and confirmed that his intermittent FMLA leave paperwork had been processed and that he was authorized to take leave. Compl. ¶ 20. At around 11 a.m., Brady determined that his condition warranted using his FMLA leave. Compl. ¶ 21. Brady informed his "lead man" and supervisor that he would be taking FMLA leave for the rest of the day; neither objected. Compl. ¶ 22. Before he left, Brady loaded his car with scrap wood that Bath Iron Works makes available to employees. Compl. ¶ 23. Brady next proceeded to Bath Iron Works's "clock out" house, where he ran into a coworker who was also leaving work. Compl. ¶ 24. They decided to go get lunch together. Compl. ¶ 24.

Shortly after he left, employees in Bath Iron Works's labor relations department learned that Brady may be at a local restaurant. Compl. ¶ 25. Bath Iron Works ordered a labor relations specialist and a labor relations legal specialist to go to the restaurant to see if Brady was there. Compl. ¶ 25. The Bath Iron Works labor relations employees found Brady at the restaurant shortly after noon and observed him from a distance. Compl. ¶¶ 26-28. Neither spoke to Brady or got within earshot of him. Compl. ¶ 28. Once at the restaurant, Brady decided not to eat because of his stress and anxiety, though the Bath Iron Works labor relations employees alleged that he drank a beer. Compl. ¶¶ 29-30. As part of their surveillance, the labor relations employees took photographs of Brady's car and of the spot in the restaurant where he and his coworker sat. Compl. ¶ 31.

Later that same day, Bath Iron Works Industrial Physician, Dr. Nia Foderingham, faxed a letter to Brady's primary care physician "seeking clarification" of her "intent with respect to" Brady's intermittent leave and accusing Brady of "utilizing his FMLA for the purpose of spending time at the local bar." Compl. ¶¶ 33-34. Dr. Franklin (Brady's primary care physician) responded to Bath Iron Works's inquiry on June 30, 2015, and explained that stress at work aggravates Brady's condition. Compl. ¶ 35.

Brady reported to work on Saturday, June 27, 2015, the day after he took FMLA leave. Compl. ¶ 36. When he tried to enter the work site, he discovered that his badge had been deactivated. Compl. ¶ 36. He went to security to try and figure out what the problem was, but they did not know either, and said they could not allow him on the premises. Compl. ¶ 37. On Monday, June 29, 2015, Brady met with members of Bath Iron Works's labor relations management team to discuss his use of intermittent FMLA leave on June 26th. Compl. ¶ 39. Brady's union representatives were also present. Compl. ¶ 39. Brady answered questions from Bath Iron Works personnel about how he used his leave time on the 26th. Compl. ¶ 40. He was not asked about his mental health condition or how it related to his need for FMLA leave. Compl. ¶ 42. At the conclusion of the meeting, Bath Iron Works suspended Brady "pending investigation for possible FMLA fraud." Compl. ¶ 41. At this point, Bath Iron Works had not yet received a response from Brady's primary care physician about how his use of leave was related to his medical condition. Compl. ¶ 35.

On July 8, 2015, a week and a half after the June 29th meeting, Dr. Foderingham sent the Bath Iron Works labor relations department an email "concluding that Mr. Brady's use of FMLA was not consistent with the temporary approval granted by the BIW office." Compl. ¶ 43. Dr. Foderingham reached this conclusion without speaking to Brady or his primary care physician about his use of leave time. Compl. ¶ 44. That same day, Bath Iron Works terminated Brady's employment. Compl. ¶ 45.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." In order to state a claim, a plaintiff must satisfy Federal Rule of Civil Procedure 8(a)'s limited notice pleading standard that requires "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint need not set forth "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "it must nonetheless 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *SEC v. Tambone*, 597 F.3d 436, 422 (1st Cir. 2010) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Applying this standard requires two steps: first, "'isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements[,]'" and second, "take the facts of the complaint as true, 'drawing all reasonable inferences in [plaintiff's] favor, and see if they plausibly narrate a claim for relief.'" *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 717 (1st Cir. 2014) (quoting *Schatz*

5

*v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)). In evaluating plausibility, particularly in the employment discrimination context, courts should be mindful of the facts the plaintiff is likely to know, versus the facts that are likely out of the plaintiff's reach at the pleading stage. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1193-94 (10th Cir. 2012) (noting that employment discrimination plaintiffs are likely to know, for example, when they requested leave and for what purpose, but may not know who actually terminated them or for what reason); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002) (noting that because an employment discrimination plaintiff may prevail without proving all elements of a *prima facie* case if discovery produces direct evidence of discrimination, it makes little sense to require a plaintiff to plead more facts than may ultimately be necessary at trial in order to survive a motion to dismiss).

## DISCUSSION

"The FMLA was enacted to help working women and men balance the competing demands of work and personal life." *Carrero-Ojeda*, 755 F.3d at 718. To further that purpose, the FMLA entitles eligible employees to twelve weeks of leave from work during any twelve-month period, including for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). To protect this entitlement, the FMLA makes it unlawful for an employer to retaliate against an employee for taking, or attempting to take, FMLA leave. 29 C.F.R. § 825.220(c); *see also* 29 U.S.C. § 2615(a)(2).

6

Here, Brady claims that he was terminated in retaliation for taking FMLA leave.[3] To establish a claim of FMLA retaliation, an employee must prove that: (1) he availed himself of a protected FMLA right; (2) he was adversely affected by an employment decision; and (3) there was a causal connection between his protected conduct and the adverse employment action. *Carrero-Ojeda*, 755 F.3d at 719. Bath Iron Works argues that Brady's claims must be dismissed because he has failed to plausibly allege that he engaged in protected conduct or that there was any causal connection between his "purportedly protected conduct" and his termination from employment. Def.'s Mot. to Dismiss 5 (ECF No. 7).

## I. Has Brady Plausibly Alleged that he Engaged in Protected Conduct?

As for whether Brady has plausibly alleged that he engaged in protected conduct, the Complaint states that Brady requested intermittent FMLA leave on June 23, 2015 by filling out Bath Iron Works's Medical Certification Form and getting the necessary certifications from his primary care physician. Compl. ¶¶ 12-16. He further alleges that he used his FMLA leave starting at 11 a.m. on June 26, 2015 after confirming that his FMLA paperwork had been processed and alerting his various supervisors that he was leaving for the rest of the day. Compl. ¶¶ 19-22. Courts have held that the first element of the *prima facie* case is met where an employee requests and takes leave, *see, e.g., Carrero-Ojeda*, 755 F.3d at 719; *Ryan v.*

---

[3] The parties agree that "the legal analysis of retaliation claims made under the FMLA and the MFMLA is identical." Def.'s Mot. to Dismiss 5 n.2 (ECF No. 7); Pl.'s Opp'n to Def.'s Mot. to Dismiss 3 n.1 (ECF No. 9).

*Pace Suburban Bus Div. Reg'l Transp. Auth.*, 837 F. Supp. 2d 834, 838 (N.D. Ill. 2011), which Brady has plausibly alleged here.

The Defendant asserts, however, that Brady could not have engaged in protected conduct on June 26, 2015 because "[t]he FMLA simply does not protect employees who wish to use their FMLA allotment to load free scrap wood, to go to a local bar, or any event not otherwise related to a serious health condition." Def.'s Mot. to Dismiss 5. Whether Brady's actions were consistent with the reason for his FMLA leave is a question of fact not properly resolved on a motion to dismiss. For present purposes, drawing all inferences in Brady's favor, he has alleged that he received approval for intermittent FMLA leave for depression and anxiety (conditions his doctor stated were partially related to work) and that he used his leave to exit the work site, load his car with scrap wood, and socialize with a coworker offsite. Compl. ¶¶ 12-14, 23-32. This is not a situation where an employee has been caught "red-handed" engaging in an activity clearly inconsistent with the intended purpose of the leave. *See, e.g., Alexander v. Bd. of Educ. of City Sch. Dist. of N.Y.C*, 107 F. Supp. 3d 323, 330 (S.D.N.Y. 2015) (employee used leave to complete coursework, not to escort her daughter to physical therapy, as stated in her FMLA request); *Capps v. Mondelez Glob. LLC*, ---F. Supp. 3d---, 2015 WL 7450539, at *2 (E.D. Pa. Nov. 24, 2015) (employee used leave to go to a bar and drink, spend time in jail for a DUI, and recover from the DUI punishment, not to attend to a bone disease that left him bed-ridden when exacerbated, as stated in his FMLA request); *Campbell v. Verizon Va., Inc.*, 812 F. Supp. 2d 748, 760 (E.D. Va. 2011) (employee used leave to gamble at a casino, not

to treat migraines, depression, and anxiety, as stated in his FMLA request).[4] Brady has plausibly alleged that he requested and took FMLA leave, and thus engaged in protected conduct.[5]

## II. Has Brady Plausibly Alleged a Causal Connection Between his FMLA Leave and Adverse Employment Actions?

As for a causal connection between taking FMLA leave and suffering an adverse employment action, Brady alleges a series of relevant facts. First, he alleges that his employer conducted surveillance on him during his initial use of intermittent FMLA leave.[6] Next, he alleges that he was barred from accessing his work site the morning after he first took intermittent FMLA leave. Further, he alleges that Bath Iron Works suspended him from work before hearing back from his primary care physician about whether his use of leave was consistent with treating his medical condition. Brady also alleges that his work performance during this period was

---

[4] Notably, the *Alexander*, *Capps* and *Campbell* cases were all resolved in favor of employers on summary judgment (though *Alexander* was a hybrid Rule 12(b)(6)/Rule 56 motion, the court clearly considered evidence beyond the pleadings). Whether Brady used his time away from work "for the intended purpose of the leave," 29 U.S.C. § 2614(a)(1), is a factual question that requires discovery. Indeed, similarly situated plaintiffs have survived motions for summary judgment. *See Moran v. Redford Union Sch. Dist.*, No. 08-cv-15215, 2009 WL 5217681, at *14 (E.D. Mich. Dec. 29, 2009) (finding an issue of fact on whether travel to Florida for vacation was inconsistent with FMLA leave for acute situational anxiety); *Weimer v. Honda of Am. Mfg., Inc.*, No. 2:06-cv-844, 2008 WL 2421648, at *1, *5 (S.D. Ohio June 12, 2008) (finding an issue of fact on whether building a porch was inconsistent with FMLA leave for a concussion and muscle strain).

[5] The Defendant requests that I take judicial notice pursuant to Federal Rule of Evidence 201 that alcohol is a depressant. Def.'s Mot. to Dismiss 8. Brady's Complaint states that "BIW Specialists alleged that Plaintiff Brady consumed a beer at the restaurant." Compl. ¶ 30. At this stage, I do not know whether Brady actually drank a beer at the restaurant or whether that action is inconsistent with treatment for his medical condition. Without factual development and insight from a medical professional, taking judicial notice that alcohol is a depressant would not resolve these questions.

[6] The Complaint alleges that Brady was first certified for intermittent FMLA leave in 2014, but does not state whether he actually used any intermittent FMLA leave before June 26, 2015. Because I must draw all reasonable inferences in Brady's favor at the motion to dismiss stage, I infer that June 26th was the first time Brady actually used FMLA leave.

otherwise satisfactory. And finally, Brady alleges that Bath Iron Works did not speak to him or his primary care physician about how his use of leave related to his medical condition during the week and a half-long investigation that ended with his termination. Taken together, these facts plausibly allege a causal connection between Brady's use of intermittent FMLA leave and his termination.

Bath Iron Works resists this conclusion by asserting that Brady has admitted that he was terminated for *misusing* FMLA leave, and has thus failed to plausibly allege that he was terminated simply for *using* FMLA leave. Def.'s Mot. to Dismiss 4, 8; Def.'s Reply 2 (ECF No. 10). It is true that Brady alleges that Bath Iron Works personnel "alleged" that he drank a beer at a restaurant during the afternoon of his FMLA leave, that his employer told him he was being suspended for possible FMLA fraud, and that he was terminated after an investigation into that fraud allegation. *See* Compl. ¶¶ 30, 41, 43, 45. But these allegations do not amount to an admission from Brady that he misused his FMLA leave, or that he was terminated for misuse, they simply state the reason Bath Iron Works *gave* Brady for his termination. *See Casseus v. Verizon N.Y., Inc.*, 722 F. Supp. 2d 326, 339 n.10 (E.D.N.Y. 2010) (explaining that a plaintiff has not admitted that he was terminated for violating company policy when answering a question that asked "[w]hat reasons *were you given by your employer* for being fired?"). At the pleading stage, Brady knows the reason his employer gave him for his termination, but he does not yet know the actual reason. He has plead sufficient facts to make out a plausible FMLA retaliation claim,

10

and is thus entitled to discovery to test whether FMLA misuse—or perceived misuse—was the true reason for his termination.

The Defendant points to *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711 (1st Cir. 2014) as requiring a different conclusion. There, the First Circuit affirmed a Rule 12(b)(6) dismissal of an FMLA retaliation claim because the plaintiff failed to plausibly allege that her FMLA leave was causally connected to her termination. *Carrero-Ojeda,* 755 F.3d at 720-21. The facts alleged by Carrero-Ojeda were distinct from the facts alleged by Brady in several important respects. First, Carrero-Ojeda had taken and returned from two separate FMLA leaves before her termination. *Id.* at 713. And although she was terminated while trying to activate her third FMLA leave, she had been found guilty of misconduct unrelated to FMLA in two separate investigations *before* she went on that leave. *Id.* at 720. Moreover, Carrero-Ojeda had not provided any facts beyond the timing of her termination to link her employer's decision to terminate her to her FMLA leave. *Id.* "[C]onsidering . . . the cumulative effect of the complaint's factual allegations, and the larger picture surrounding her discharge," the court could not "find that [the plaintiff's] complaint plausibly supports a finding that her termination was causally connected to her requests for FMLA leave." *Id.* at 721 (internal citations and quotations omitted). So while it is certainly possible for allegations to be too implausible to support a causal connection between taking FMLA leave and suffering an adverse action, that is not the situation with Brady's Complaint. He has plausibly alleged a causal connection between his use of FMLA leave and his termination.

11

## CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant Bath Iron Works's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 7).

SO ORDERED.

                                              /s/ Nancy Torresen
                                              United States Chief District Judge

Dated this 25th day of May, 2016.